IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANITA J. SMITH                                                             PLAINTIFF

       VS.                         CASE NO. 2:14-CV-02037-MEF

CAROLYN W. COLVIN,
Commissioner of Social Security Administration                 DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Anita J. Smith, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff protectively filed her application for a period of disability and disability insurance benefits on February 8, 2012, alleging an onset date of July 11, 2011, due to hip problems and arthritis. (T. 100-103, 117) For DIB purposes, Plaintiff's date last insured was December 31, 2014. (T. 114) Plaintiff's application was denied initially and on reconsideration. (T. 44-46, 50-51) Plaintiff then requested an administrative hearing (T. 53-54), which was held on November 5, 2012. Plaintiff was present and was represented by counsel. (T. 23)

At the time of the administrative hearing, Plaintiff was 31 years of age, had graduated from high school, and had approximately 30 hours of college credits. (T. 25-26) The Plaintiff had past

relevant work ("PRW") experience as a store manager at Perfume Max, as a cashier at Wal-Mart, as a CNA, as the office manager of a business owned by a former spouse, and as a stocker and cashier at Hancock Fabric. (T. 26-29, 155)

In a Decision issued on November 20, 2012, the Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, found that although Plaintiff has the following severe impairments, pain on extended weight bearing due to hip fractures from 20 years ago (20 C.F.R. § 404.1520(c)), Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (T. 10-11) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (T. 11-14) With the assistance of a vocational expert, Deborah Steel, Ph.D., the ALJ determined that while Plaintiff is unable to perform her past relevant work (T. 14), Plaintiff could perform the requirements of such representative occupations as credit card call-out clerk (DOT#210.382-038) of which there are 3,331 jobs in the region, cashier for check cashing (DOT#211.462-026) of which there are 3,444 jobs in the region, and radio dispatcher (DOT#379.362-010) of which there are 900 jobs in the region. (T. 15, 30-31) The ALJ then concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 11, 2011 through the date of the ALJ's Decision on November 20, 2012. (T. 15)

Plaintiff appealed this decision to the Appeals Council (T. 4), but said request for review was denied on January 15, 2014. (T. 1-3) Plaintiff then filed this action on February 27, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 12 and 14)

**II. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability,

not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff has not been disabled from the alleged date of onset on July 11, 2011. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ inappropriately discredited Plaintiff's subjective complaints; (B) the ALJ's RFC determination is inconsistent with the record; and, (C) the Plaintiff cannot perform the jobs identified at Step Five. (Doc. 12, pp. 6-8, 7-12, 12-13) Because of the Court's ruling set forth below on the issue of determining Plaintiff's RFC, the other points are not addressed herein.

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982). The ALJ found that Plaintiff has the RFC to perform the full range of sedentary

work. The medical evidence of record, taken as a whole, does not substantially support that finding.

On January 31, 2012, Plaintiff saw Luc Balis, M.D. to get established and for bilateral hip pain from previous surgery, epigastric pain with food, and depression. She advised Dr. Balis that she broke her right hip in 1990, and that she had hip surgery in December, 1990 and then again in September, 1991. (T. 161, 163) Dr. Balis prescribed Mobic, Prilosec, and Citalopram, and he referred Plaintiff to Dr. Wolfe for further evaluation and treatment. (T. 161)

Plaintiff saw Michael S. Wolfe, M.D., an orthopaedic surgeon, on February 9, 2012. Plaintiff presented with bilateral hip pain, left worse than right. Dr. Wolfe recalled that he had seen Plaintiff almost 20 years before, treating her for slipped capital femoral epiphysis on the right that was pinned, and that she ultimately had intervention for the left hip as well. He noted that she is doing very well, but has a bit of increasing pain with walking. His physical examination of Plaintiff showed that both lower extremities had intact motor and sensory function; good pulses; full range of motion of the right hip; good alignment; good strength and stability; slight tenderness over the greater trochanter; only 20 degrees of internal rotation of the left hip; otherwise full alignment; good strength and stability; and, tenderness over the greater trochanter. X-rays showed evidence of the previous pinning for slipped capital femoral epiphysis, with good alignment, and no evidence of penetration or avascular necrosis. Dr. Wolfe's impression was status-post bilateral slipped capital femoral epiphysis with pinning, with resultant bilateral trochanteric bursitis. He continued her on Meloxicam, gave her an injection with 12 mg of betamethasone over the left greater trochanter, and scheduled her to return in three weeks. He noted that if she continues to have further problems, further work-up may be necessary including MR arthrogram of her hip. (T. 171)

Plaintiff returned to see Dr. Wolfe on March 1, 2012. She complained of pain in her left hip.

She reported that her left hip was better after the injection on February 9, 2012, but that the pain was still moderate. Intact motor and sensory function was noted, with good pulses and full range of motion of the hip. Good alignment, good strength and good stability were also noted, with slight tenderness over the greater trochanter. Dr. Wolfe's impression remained the same as on February 9, 2012, and he continued Plaintiff on Meloxicam and scheduled her to return in two weeks. He stated: "[a]lthough she is improved I think she is having a painful hip related to her previous injury with secondary trochanteric bursitis and synovitis. I think she would have great difficulty carrying out a job that involved prolonged weightbearing and any carrying, lifting, pulling, etc. I think this is a problem that will be persistent, perhaps even ultimately requiring an MR arthrogram of the hip and possible surgical intervention including possibly removing her hardware." (T. 168)

Plaintiff next saw Dr. Wolfe on April 30, 2012, and she again complained of pain in her left hip. As he had on March 1, 2012, Dr. Wolfe noted that her hip was better after the injection on February 9, 2012, but that her pain has recurred to a moderate degree. Plaintiff advised Dr. Wolfe that the pain is increased with weightbearing or lying on the hip. Intact motor and sensory function was observed in the left lower extremity, with good pulses and full range of motion of the hip. Good alignment, good strength and good stability were also noted. She had pain on internal rotation of the hip and positive tenderness over the greater trochanter. Dr. Wolfe diagnosed Plaintiff with status post pinning for slipped capital femoral epiphysis with greater trochanteric bursitis. Dr. Wolfe informed Plaintiff that there was still a possibility of arthritic problems and possibly some rubbing from her pins, although there did not appear to be any penetration. He stated, "I would like to complete her evaluation by getting a MR arthrogram, but she wants to hold that until she obtains social security benefits." Plaintiff was continued on Mobic, and Dr. Wolfe reported that: "she does understand that

a more rapid evaluation could help, although I understand her financial situation. I told her that if the pain becomes worse we can certainly try to work this out for her. At present, she does have great difficulty walking and doing her work because of the pain in her hip." (T. 228)

Dr. Wolfe completed a Medical Source Statement on April 30, 2012. (T. 209-211) He limited Plaintiff to lifting/carrying less than ten pounds occasionally, but no lifting/carrying frequently; she could stand and/or walk less than two hours in an eight hour day; no limitations for sitting; and, pushing and/or pulling was limited in the lower extremities. The medical/clinical findings to support these limitations were reported as "patient has old slipped capital femoral epiphysis to both hips that required surgery," and "she has secondary arthritis and bursitis." Dr. Wolfe also indicated that Plaintiff could only occasionally balance, and never climb, kneel, crouch or crawl.

Plaintiff returned to see Dr. Wolfe on July 19, 2012. The ALJ's Decision does not mention this visit. Her subjective complaints remained consistent, recurrent bilateral hip pain of at least moderate degree. Both lower extremities revealed intact motor and sensory function and good pulses. She was observed to lack terminal ten degrees of internal rotation in both hips. Good alignment, strength and stability were noted, with tenderness over the greater trochanter. Dr. Wolfe's diagnosis remained status post pinning for slipped capital femoral epiphysis with secondary trochanteric bursitis. He stated, "I still think at some point she may require surgical intervention, at a minimum requiring removal of her pins," and that "[s]he does not have insurance at this time." Plaintiff was again given an injection of 12 mg of betamethasone over the greater trochanter on the left, and she was continued on Mobic. Dr. Wolfe scheduled Plaintiff to return in two weeks, and he indicated that he would "probably inject the right hip." The issue of her inability to pay for further treatment was again noted. (T. 226)

Plaintiff returned to see Dr. Wolfe on October 30, 2012. This office visit was also not mentioned by the ALJ. Dr. Wolfe reported that Plaintiff's chief complaint remained bilateral hip pain; that she had "really done very well" following the pinning surgeries; but, that the pain has recurred over the past few years. He also noted that "[s]he had a fall 2 weeks ago landing on her right hip," and that "the pain has increased since then." Some swelling was seen, and Plaintiff reported increased pain with getting up and down. On exam, both lower extremities revealed intact motor and sensory function, good pulses, and ten degrees of internal rotation to both hips with good alignment, strength and stability. Some pain was observed on internal rotation, and "[s]he is markedly tender over the right greater trochanter." Dr. Wolfe's diagnosis was status post pinning for bilateral slip capsular femoral epiphysis with secondary trochanteric bursitis and limited motion. He continued Plaintiff on Mobic and administered an injection for trochanteric bursitis on the right hip. He again raised the need for surgical intervention, including removing the pins, remarking that, "[b]ecause of the limited motion and pain we may want to do an MR arthrogram on both hips before surgery," that "she has no insurance at this time and we are trying to help her through this," and that "I told her we would help her in any way should she need information." (T. 224)

Contemporaneous to the office visit on October 30, 2012, Dr. Wolfe amended the Medical Source Statement he previously prepared on April 30, 2012. He advised that sitting is affected by the impairment, and he limited Plaintiff to sitting less than six hours in an eight hour workday and that she must periodically alternate sitting and standing to relieve pain or discomfort. (T. 221)

The opinion of a treating physician is accorded special deference and will be granted controlling weight when it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch*

*v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). An ALJ is generally obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). Moreover, opinions of specialists on issues within their areas of expertise are generally entitled to more weight than the opinions of non-specialists. *See* 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5); *Guilliams v. Barnhart* 393 F.3d 798, 803 (8th Cir. 2005); *Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010).

The ALJ commented that he considered Dr. Wolfe's opinions, and that he gave them "some weight because he is the treating physician and has specialized knowledge regarding orthopedic impairments." The ALJ found that Dr. Wolfe's clinic notes are "completely consistent with the full range of sedentary work," as are the first two residual functional capacity assessments Dr. Wolfe made, but that the third assessment was "more limiting than the objective medical evidence of record would support." (T. 13) No further explanation is given by the ALJ to discount Dr. Wolfe's opinions. While the ALJ specifically discussed Dr. Wolfe's clinic notes of February 9 and March 1, 2012, the ALJ does not even mention, and appears not to have given any consideration to, Dr. Wolfe's ongoing treatment of Plaintiff and his clinic notes of July 19 and October 30, 2012.

The only other medical evidence of record are the reports of two non-examining physicians. Upon a review of medical records only, Patricia McCarron, M.D., completed a Physical Residual Functional Capacity Assessment form on March 22, 2012. Dr. McCarron opined that Plaintiff could lift and/or carry ten pounds occasionally, less than ten pounds frequently, stand and/or walk at least two hours in an eight hour workday, sit for a total of about six hours in an eight hour workday, and push and/or pull (including operation of hand and/or foot controls) without limitation. (T. 178) Referring to Dr. Wolfe's office notes of March 1, 2012, Dr. McCarron concluded that the medical

evidence supported an RFC to sedentary duty. (T. 184) On May 25, 2012, Ronald Crow, D.O., another non-examining physician, advised in a one sentence report that he "had reviewed all the evidence in file and the assessment of 3/22/12 is affirmed as written." (T. 219)

The Eighth Circuit has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003). Nonetheless, there are two exceptions to this general rule. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). An ALJ's decision to credit a one-time consultant and discount a treating physician's opinion may be upheld (1) where [the one-time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Id.*; *see also Anderson v. Barnhart*, 344 F.3d 809, 812-13 (8th Cir. 2003). Such are not the circumstances in the instant case.

The Court finds no basis to conclude that the non-examining physicians' opinions are supported by better or more thorough medical evidence. To the contrary, Dr. McCarron specifically relies upon a clinic note of Dr. Wolfe dated March 1, 2012 in support of her RFC assessment; however, she did not have the benefit of Dr. Wolfe's additional treatment records from April, July, and October, 2012. Likewise, Dr. Crow's assessment shows that he reviewed no medical records beyond Dr. Wolfe's office notes of March 1, 2012. Further, the record fails to show that either Dr. McCarron or Dr. Crow had access to other medical evidence that was unavailable to Dr. Wolfe.

Accordingly, the "better and more thorough medical evidence" exception does not support the ALJ crediting the opinions of the non-examining physicians and discounting the opinions of the treating physician, an orthopedic specialist, in this case.

Nor can it be said that Dr. Wolfe has rendered inconsistent opinions that undermine the credibility of his opinions. In this regard, it appears that a factual error made by the ALJ affected his evaluation of Dr. Wolfe's opinions. The ALJ states that Dr. Wolfe completed an assessment of the Plaintiff's condition on April 25, 2012, at which time he reported that Plaintiff's sitting abilities were not affected by the hip impairments. (T. 13) The ALJ then states that Dr. Wolfe completed an assessment of the Plaintiff's condition on April 30, 2012, at which time he reported that Plaintiff's ability to sit was limited to less than six hours in an eight hour workday and that she must periodically alternate sitting and standing. (T. 13) It is this latter report, that the ALJ thinks was issued on April 30, 2012, just five days after a report on April 25, 2012, that the ALJ discredits as being inconsistent with the other objective medical evidence. The problem is, though, that both dates given by the ALJ are incorrect, and the ALJ has the sequence of events wrong.

An examination of the record reveals that there is *no* report from Dr. Wolfe dated April 25, 2012. The Medical Source Statement was actually issued by Dr. Wolfe on April 30, 2012, which date coincides with Plaintiff's office visit on that date. (T. 209-211, 228) Then, after treating Plaintiff again on July 19 and October 30, 2012, Dr. Wolfe amended his report to reflect that Plaintiff was limited to sitting less than six hours in an eight hour workday and must periodically alternate sitting and standing to relieve pain. (T. 221) The amended statement is signed by Dr. Wolfe and dated

October 29, 2012[1]. The evidence of record demonstrates that while Dr. Wolfe believed that Plaintiff could sit without limitation at the time of his Medical Source Statement issued on April 30, 2012, after additional examinations and treatment (including two more injections) over the next six months failed to provide relief, Dr. Wolfe reassessed Plaintiff's ability to sit and he imposed additional limitations. Because the ALJ did not have the proper sequence of events concerning these two statements from Dr. Wolfe, the ALJ discounted Dr. Wolfe's latter statement as being inconsistent with the objective medical evidence of record. This was error.

It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

After reviewing the record as a whole, the Court concludes that the ALJ improperly discounted the amended Medical Source Statement of Dr. Wolfe, the treating physician and an orthopedic specialist, in determining the Plaintiff's RFC. Therefore, the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence, and the case must be reversed and remanded. On remand, the ALJ should obtain an updated Medical Source Statement from Dr. Wolfe regarding whether and to what extent Plaintiff's physical impairments limit her ability to work.

The Court also finds that the evidence of record concerning Plaintiff's daily activities is incomplete. No function report regarding Plaintiff's daily activities was ever obtained in this case, and the inquiry by the ALJ at the hearing was limited to three questions about how Plaintiff's

---

[1] It seems probable to the Court that the actual date was October 30, 2012, which is the date of Plaintiff's office visit with Dr. Wolfe.

children get to school (school bus), whether Plaintiff has an automobile (yes), and whether Plaintiff does grocery shopping (yes, but often with assistance from a friend or her mother, and only for short periods of time). (T. 37) On remand, the ALJ should obtain a completed function report from Plaintiff concerning the full array of her daily activities and how they are affected by her impairment. A supplemental hearing should also be held, and the Plaintiff recalled and questioned thoroughly regarding her activities of daily living. This should include specific questions regarding Plaintiff's ability to cook and prepare meals, do dishes, do laundry, help with the children's homework, perform household chores, lift food packages from grocery shelves, push and pull a shopping cart around the store and to the vehicle, and to lift and carry bags from the shopping cart to the car. It cannot merely be assumed that the Plaintiff can perform these tasks without further development of the record.

With this additional evidence, the ALJ should then reassess Plaintiff's RFC and specifically list in a hypothetical to a Vocational Expert any limitations that are indicated in the RFC assessments and supported by the evidence.

### IV.  Conclusion

Having carefully reviewed the record, the Court finds that the ALJ's Decision denying the Plaintiff benefits is not supported by substantial evidence, and therefore, the case should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 11th day of February, 2015

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE